IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        Case No. 19-10103-JWB

EMMANUEL GOINES, JR.,

        Defendant.

**MEMORANDUM AND ORDER**

This case comes before the court on Defendant's renewed motion for judgment of acquittal. (Doc. 86.) The motion has been fully briefed and is ripe for decision. (Docs. 87, 92.) Defendant's motion is DENIED for the reasons herein.

**I.    Background**

A jury convicted Defendant on one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g). Pursuant to Federal Rule of Criminal Procedure 29(c), Defendant now moves the court to set aside the jury verdict and enter a judgment of acquittal. Defendant argues that the government did not prove beyond a reasonable doubt that he possessed a firearm.

The following is a discussion of the evidence presented at trial. On June 25, 2019, Defendant was a passenger in a vehicle driven by another individual. Wichita police officers attempted to stop the vehicle after a traffic infraction. When the lights were activated on the patrol car, the vehicle fled. A video of the pursuit was played for the jury. Prior to Defendant's exit, an individual in the front passenger seat exited the vehicle. The video also showed items being

discarded from the vehicle. At some point, the individuals in the rear exited the vehicle, including Defendant. Officer Henry did not give chase as he continued to pursue the driver. Officer Henry did testify about Defendant's exit from the vehicle as follows: "I first noticed the defendant flee from the rear passenger side of the vehicle. I noticed as he was running, his left arm was held close to his body around his waist line, while his right arm swung freely indicative, based on my training and experience, of a person that is potentially armed." (Tr. vol. I at 171.) Henry observed Defendant run behind a residence at 1528 N. Belmont. Defendant was arrested within several minutes. At the time of his arrest, Defendant had one cellphone in his hands and one in his pocket.

Although Officer Henry did not observe an object in Defendant's hand at the time of the incident, Henry later viewed the axon video from his patrol car. The video does show that Defendant has a black item in his left hand. The government also introduced, through expert testimony, the same video but it was zoomed in on Defendant's left hand and played in slow motion. Based on that video, the black object has an angle and protrudes out of Defendant's hand. After viewing the video, Henry believed the item in Defendant's hand was a gun although he did testify that he was speculating and was not certain. (Tr. vol. I at 212.)

Later that day, Henry returned to 1528 N. Belmont, which was an abandoned residence, with additional officers. One officer, Officer Nail, had a canine named "Nash" with him. While in the backyard, Nash alerted to human odor, which was an odor he had been trained to find. Upon entering the backyard, Henry immediately observed an extended ammunition magazine on the ground not far from the gate. (Tr. vol. I at 182.) Thereafter, Officer Nail located a handgun on a downed fence panel in the same backyard area. Henry testified that there was no indication, based on the condition of the handgun and the magazine, that the items had been outside and exposed to the elements for an extended period of time. (Tr. vol. I at 189.) Henry testified that there had been

2

heavy rain in the area three days prior to the incident and that he would have expected to see some indication of weathering, i.e. water marks, dust, or debris, had the items been outside for an extended period of time. The picture of the magazine showed that there were two small sticks laying over the magazine.

Mindy Harris testified that she did not locate any fingerprints on the firearm although she did testify that fingerprints are only retrieved off of firearms in approximately ten percent of cases. Neal Tierney testified that the firearm was functional and that it was manufactured out of the state. There were also two DNA experts who testified. Both testified that there were DNA profiles on the firearm but that Defendant's DNA profile was excluded as the major contributor. The major contributor means that it is the profile that has more DNA in the sample relative to the other samples. (Tr. vol. II at 336.) Dr. Hoofer testified that there were minor contributors on the firearm but the quality of the samples was not reliable enough to make a comparison to Defendant's DNA profile. (Tr. vol. II at 340-41.) Dr. Hoofer further testified that an individual's DNA profile might not be detected on an item after the individual has touched that item. (Tr. vol. II at 347.) Candy Zuleger, the second expert, testified that she would expect to find Defendant's DNA profile on the gun given the hot weather conditions and the fact that Defendant was running when he was allegedly gripping the firearm. (Tr. vol. II at 399.) She testified on cross examination that it is possible for Defendant to touch the firearm and not leave his DNA. (Tr. vol. II at 406.)

**II.   Analysis**

Defendant argues that the jury's verdict is not supported by substantial evidence but by inference piled upon inference and that a reasonable jury could not find him guilty beyond a

reasonable doubt. At issue in this motion is the evidence pertaining to the possession of the firearm and ammunition as Defendant does not challenge the other two elements pertaining to the charge.[1]

Federal Rule of Criminal Procedure 29(c)(2) provides, in relevant part, that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." When deciding a motion under the rule, the court "ask[s], whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). In examining the evidence, the court must consider the "collective inferences to be drawn from the evidence as a whole." *United States v. Vallejos*, 421 F.3d 1119, 1122 (10th Cir. 2005) (quoting *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997)). "[W]hile the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *Id.* It is also the jury's province to determine the credibility of witnesses and weigh conflicting evidence. *Magallanez*, 408 F.3d at 682.

Essentially, Defendant argues that the jury's determination that he possessed a gun was not supported by the evidence at trial. Defendant contends that Henry only speculated that the black object was a gun, he was arrested with a cell phone in his hand, and the expert evidence does not corroborate the government's theory. Defendant made these same arguments in closing. The jury simply did not find them persuasive.

The focus of the jury trial came down to whether Defendant was holding a gun or a phone in his hand. The evidence at trial must be viewed in favor of the prosecution. *Magallanez*, 408

---

[1] Defendant stipulated to his status as a felon and that he had knowledge of that status.

F.3d at 681. Defendant first argues that there was no conclusive testimony that Defendant was holding a gun. Rather, Henry, viewing the video evidence, testified that he believed that the object was a gun but admitted that his testimony was speculation. Notably, the jury was provided with the enhanced video and photographs. They were also provided with the video showing Defendant running from the vehicle. It is clear that Defendant is running with a black object in his hand. The jury was also presented with testimony from Henry, stating that in his experience, Defendant was running in a manner that suggested that he was holding a weapon. *See United States v. Robinson*, 139 F. App'x 74, 75 (10th Cir. 2005) (officer testified that people run with a sprinter's motion instead of holding a hand by the waist area); *see also United States v. Guardado*, 699 F.3d 1220, 1222 (10th Cir. 2012) (officer testified that holding hand close to front of body while being pursued indicates that individual was concealing evidence or a weapon). The video shows Defendant running with his right arm swinging but his left arm close to his body like he was trying to shield something from the view of the officer. The gun and magazine were then located on the path that Defendant ran. Henry further testified that the gun and magazine were freshly placed.

Based on this evidence, the jury could conclude that Defendant had possession of the firearm as he was fleeing the vehicle. The jury could have concluded that if Defendant was running with a cell phone, instead of a firearm, that he would likely have pumped his arms symmetrically, like a relay racer carrying a baton, rather than assume the awkward posture depicted in the video, which suggests an intent to shield the object from the officer's view. *See Guardado*, 699 F.3d at 1222, 1225. Moreover, the Tenth Circuit has repeatedly held, and this jury was instructed, "that a defendant's intentional flight from police officers may be used as circumstantial evidence of guilt." *United States v. Morales*, 758 F.3d 1232, 1236 (10th Cir. 2014). At the time Defendant fled the vehicle, he was a felon and he had knowledge of his status as a felon.

With respect to Defendant's argument regarding the expert testimony, the experts testified that Defendant could have gripped the firearm and not left DNA or fingerprints. Although Candy Zuleger testified that she would expect DNA to be found on the firearm, she admitted that Defendant could have gripped the firearm and not left DNA on it. The fact that there was DNA on the firearm from an unknown individual did not lead the experts to testify conclusively that Defendant did not handle the firearm. Therefore, the lack of DNA or fingerprint evidence does not mean that a rational jury could not have found Defendant guilty of possession of a firearm.

"Like any other fact in issue, possession [of a weapon by a prohibited person] may be proved by circumstantial as well as direct evidence." *Id.* at 1235. The court finds that based on the circumstantial evidence presented at trial, a reasonable jury could conclude that Defendant had "direct physical control over [the] firearm" right before he entered the backyard of the residence and then discarded it in that yard as he fled. *Id.* at 1236. Therefore, the evidence was sufficient to sustain the jury's finding.

### III. Conclusion

IT IS THEREFORE ORDERED this 3rd day of March, 2020, that Defendant's motion for judgment of acquittal (Doc. 86) is DENIED.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE